**KRONENBERGER ROSENFELD, LLP**
Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)
Liana W. Chen (CA Bar No. 296965)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KRInternetLaw.com
jeff@KRInternetLaw.com
liana@KRInternetLaw.com

Attorneys for Plaintiff Oriana Harrison

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ORIANA HARRISON**, an individual, <br><br> Plaintiff, <br><br> v. <br><br> **PORTFOLIO GROUP MANAGEMENT, INC.**, a Nevada corporation; **EXECUTIVE MANAGEMENT SOLUTIONS, INC., d/b/a TAXCITE**, a California corporation; **DAVID GLENWINKEL**, an individual; and **KRISTI CROWLEY**, an individual, <br><br> Defendants. | Case No. 2:18-at-00642 <br><br> **COMPLAINT FOR:** <br><br> 1. **NEGLIGENCE;** <br> 2. **BREACH OF FIDUCIARY DUTY;** <br> 3. **BREACH OF CONTRACT;** <br> 4. **VIOLATION OF CAL. FINANCIAL CODE §51000, ET SEQ.; AND** <br> 5. **CONVERSION** <br><br> **(28 U.S.C. §1331; DIVERSITY OF CITIZENSHIP)** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Oriana Harrison ("Plaintiff"), by and through her undersigned counsel, alleges as follows against Defendants Portfolio Group Management, Inc. ("PGM"), Executive Management Solutions, Inc. *dba* TaxCite ("EMS"), David Glenwinkel ("Glenwinkel"), and Kristi Crowley ("Crowley") (collectively, "Defendants").

## JURISDICTION

1. This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §1332 because the claims at issue are between a citizen of a foreign state on the one hand and the citizens of the United States on the other hand, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Plaintiff is a citizen of Australia, and she resides in England. PGM is a Nevada corporation with a principal place of business in California. EMS is a California corporation with a principal place of business in California. Glenwinkel and Crowley are citizens of California. The matter in controversy exceeds $1,877,023.24, which is the amount of Plaintiff's money that Defendants wrongfully transferred to a third party.

## PERSONAL JURISDICTION AND VENUE

2. This Court has personal jurisdiction over Defendants because a substantial part of Defendants' misconduct that gave rise to this action occurred in California, PGM and EMS have principal places of business in California, and Glenwinkel and Crowley reside in California.

3. Venue is proper pursuant to 28 U.S.C §1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and all Defendants reside in, or have principal places of business in, this District.

## NATURE OF THE ACTION

4. Plaintiff is a 61-year-old victim of wire fraud who has lost nearly $2 million.

5. Plaintiff contracted with Defendants—who held themselves out as experienced professionals in tax and asset protection—to assist her with safeguarding the $1,877,023.24 in proceeds ("Funds") from selling her residence in Oakland, California ("Residence") and transferring the Funds pursuant to Plaintiff's instructions once Plaintiff

found a replacement home to purchase in the United Kingdom.

6. The wire fraud industry has exploded in the last couple of years, affecting nearly $1 billion in real estate transactions in fiscal year 2017. Despite this, Defendants failed to implement *any* safeguards or procedures to protect Plaintiff's Funds. In fact, when one or more third parties with a Bulgarian bank account ("Third Parties") emailed Defendants requesting that Plaintiff's Funds be wired to a suspicious account in Bulgaria, Defendants practically handed over the money and confirmed the transaction for weeks, including to the FBI after the FBI tagged the transaction as suspicious.

7. Specifically, Defendants contracted to be Plaintiff's "exchange facilitator" aka "qualified exchange intermediary," representing that they could help her with tax benefits for conducting a "like-kind" residential property exchange. When Plaintiff sold her Residence in Oakland in October 2017, PGM deposited the Funds into their own bank account with Wells Fargo; the Funds were to be held for Plaintiff's benefit until she found a replacement home. In March 2018, Plaintiff found a replacement property and directed Defendants to transfer the Funds to purchase it. PGM failed to do so.

8. Instead, after numerous communications with Plaintiff at her email address ofavaro29@gmail.com, Defendants received an email from a different email address, ofavaro299@gmail.com (with an extra last digit 9), suspiciously requesting that PGM transfer all of the Funds to an account in Bulgaria. Defendants not only transferred all of Plaintiff's Funds to Third Parties pursuant to this one highly suspect email, they confirmed the transfer for two weeks, even after Plaintiff repeatedly followed up about the missing funds *and* the FBI contacted Defendants with a flag on the transaction. When Defendants finally requested to recall the wire two weeks later, Wells Fargo rejected the request, and Defendants claimed the Funds were gone.

9. Defendants not only failed to act reasonably under the circumstances, they breached their fiduciary duty to Plaintiff and violated California regulations for exchange facilitators, *e.g.,* by failing to secure a bond or equivalent to cover this loss.

10. As a result, Plaintiff has suffered damages, plus attorney's fees, interest,

costs, and extreme emotional distress.

## PARTIES

11. Plaintiff Oriana Harrison is an individual residing in England. Plaintiff is a citizen of Australia.

12. On information and belief, Defendant Portfolio Group Management, Inc. is a Nevada corporation with its principal place of business in Auburn, California. On information and belief, although PGM has maintained active foreign filings in California, its business license expired in Nevada, and it has dissolved in Nevada.

13. On information and belief, Defendant Executive Management Solutions, Inc. *dba* TaxCite is a California corporation with its principal place of business in Auburn, California. On information and belief, PGM and EMS do business as each other.

14. On information and belief, Defendant David Glenwinkel is an individual residing in Auburn, California, the owner of PGM, and a principal of EMS.

15. On information and belief, Defendant Kristi Crowley is an individual residing in Auburn, California and a principal of PGM and EMS.

16. On information and belief, Glenwinkel and Crowley treated PGM and EMS (along with various other companies) as their "alter ego." In particular, Glenwinkel and Crowley appear to have conducted business as, and entered into contracts on behalf of, PGM while it was a dissolved company in Nevada. On information and belief, Glenwinkel and Crowley used PGM and EMS's corporate assets as their own, transferred corporate funds to other businesses to avoid corporate debts, represented that they were personally responsible for the loss of the Funds, and/or failed to adequately capitalize each corporation, which has resulted in insufficient assets to meet corporate debts. It would sanction a fraud and/or promote an injustice to uphold the corporate entities and allow Glenwinkel and Crowley to escape personal liability to Plaintiff.

## FACTUAL ALLEGATIONS

### Expansion of Real Estate Wire Fraud

17. The FBI has provided data that in fiscal year 2017, nearly $1 billion was

diverted or attempted to be diverted from real estate purchase transactions and wired to third-party accounts. That figure is up "explosively" from fiscal year 2016, when the FBI counted $19 million in wire-transfer frauds affecting home buyers.[1]

18. As a growing scheme, third parties, often in foreign countries, hack into email accounts or computers of escrow and tax companies. These third parties then intercept and read email instructions for large wires and then delete the original email and create a new email with instructions to wire the money to the third party's account.

### Defendants' Contract to Safeguard and Transfer Plaintiff's Funds

19. Plaintiff is a 61-year-old woman who formerly owned and resided at the Residence at 1060 Hubert Road, Oakland, California.

20. Defendants held themselves out to Plaintiff as trusted tax and financial advisors that fully comply with the law and have more than 30 years of experience in tax and asset protection. Plaintiff contracted with Defendants to act as her tax consultant and to complete her 2017 taxes in exchange for payment of fees.

21. Defendants also held themselves out to Plaintiff as an "exchange facilitator" aka "qualified exchange intermediary" to assist Plaintiff with tax-deferral benefits for a like-kind exchange of residential real estate under Internal Revenue Code §1031. *See also* Cal. Fin. Code §51009(a) ("A person who engages in business as an exchange facilitator shall have the responsibility to act as a custodian for all exchange funds . . ."). Defendants represented that, once Plaintiff sold her Residence in Oakland, they would assist Plaintiff in safeguarding Plaintiff's Funds from the sale and then transferring the Funds for Plaintiff to use on a like-kind replacement property in the United Kingdom. Plaintiff contracted with Defendants to act as her exchange facilitator in exchange for payment of at least 3% of the Funds in fees.

22. Plaintiff and Defendants negotiated and agreed to the foregoing contract

---

[1] Harney, Kenneth, *Hackers Prey on Home Buyers, With Hundreds of Millions of Dollars at Stake* (Nov. 1, 2018), https://www.washingtonpost.com/realestate/hackers-prey-on-home-buyers-with-hundreds-of-millions-of-dollars-at-stake/2017/10/30/0379dcb4-bd87-11e7-97d9-bdab5a0ab381_story.html?utm_term=.ded5114d6386.

terms, which formed an oral contract with mutual assent and understanding between the parties. Further, Glenwinkel confirmed the oral contract in written emails and signed a written contract on behalf of PGM to act as an exchange facilitator for Plaintiff. Plaintiff fully performed her duties under, and acted in reliance on, the contract by paying Defendants their fees, selling her Residence, allowing transfer of the Funds to Defendants' bank account at Wells Fargo, and moving to the United Kingdom.

23. Plaintiff paid Defendants their fees to complete her 2017 taxes and for their work as an exchange facilitator; those fees have not been refunded.

24. Defendants had superior knowledge, skill, and experience in their work for her, and Plaintiff relied on same in her interactions and contracts with them.

25. Defendants failed to complete Plaintiff's 2017 taxes (asserting Plaintiff needed to file an extension due to their inability to wire the Funds as Plaintiff instructed).

26. Defendants failed to safeguard Plaintiff's Funds and failed to transfer the Funds for Plaintiff to use on a like-kind replacement property.

27. Defendants used their various business names, including PGM, EMS, and TaxCite interchangeably in their interactions with Plaintiff.

28. On information and belief, Defendants failed to obtain any bond, deposit, or letter of credit for their work as an exchange facilitator.

### **Defendants' Failure to Guard Against Wire Fraud**

29. On information and belief, Third Parties hacked into Defendants' email accounts and/or computers, or otherwise gained access to Defendants' emails, allowing Third Parties to intercept, read, and delete emails to and from Plaintiff and Defendants.

30. On information and belief, Defendants had not implemented any safeguards to protect against third-party hacking into their email accounts or computers, despite massive wire fraud affecting the tax and real estate industries.

31. On March 8, 2018, Plaintiff sent Defendants an email from her email address <ofavaro29@gmail.com> asking them to transfer the Funds to purchase her replacement property in the United Kingdom. Plaintiff had communicated with

Defendants from that email address numerous times before.

32. On information and belief, Third Parties deleted Plaintiff's email and then emailed Defendants from the email address <ofavaro299@gmail.com> (*i.e.,* an email address similar to Plaintiff's email address but with an extra "9" at the end), asking them to transfer the Funds to an account in Bulgaria.

33. Plaintiff did not have a bank account in Bulgaria and had never indicated to Defendants any reason for them to believe she would have an account in Bulgaria. In fact, Defendants knew that Plaintiff was moving to England, and Glenwinkel had previously emailed Plaintiff, "Where will you be banking in England?"

34. On March 9, 2018, Defendants wired (or instructed Wells Fargo to wire) the Funds minus Defendants' fees to Third Parties' account in Bulgaria. In other words, despite the non-identical email addresses and the inherent issue that Third Parties requested that such a substantial amount be transferred to an account in Bulgaria (instead of to the United Kingdom where Plaintiff found a replacement property), Defendants transferred all of the Funds to Third Parties.

35. On information and belief, Defendants had not implemented any safeguards to protect against third-party wire fraud or to verify the identity of wire recipients (*e.g.*, verifying the email address, confirming the transfer via phone with Plaintiff or the recipient bank, requiring a signature or identifying information, requesting proof of photo identification, using a secure password encrypted database, providing a verification code for the transfer, or sending a smaller test amount prior to wiring nearly two million dollars), again despite the devastating growth in wire fraud in the real estate industry of which a reasonable person in their position would have been aware.

36. Over the next two weeks, Defendants confirmed the wire transfer to Third Parties after multiple red flags and despite Plaintiff's repeated requests for verification, as she had not received the Funds pursuant to her instructions.

37. In particular, on information and belief, on March 12, 2018, Shoun Moa at the FBI contacted Crowley to see if the transaction for the transfer of the Funds to Third

Parties' bank in Bulgaria had been authorized; Crowley confirmed that the wire to the third party was legitimate (which of course, it was not).

38. On March 15, 2018, Crowley emailed Plaintiff, reassuring her that the Funds would be properly transferred, stating, "I spoke with my relationship manager and he contacted the Wells Fargo wire department. It appears that the wire transfer was under review but it's all sorted out now. The funds will be available in your account on Tuesday, 20th." Crowley also emailed Plaintiff, "our account should be credited today. So i can transfer your funds once the wire hits the PGM Fund account tomorrow."

39. During this time, Plaintiff continued to request that Defendants follow up regarding the Funds as they were still missing from Plaintiff's bank account in the United Kingdom.

40. Finally, on March 23, 2018, Crowley emailed Plaintiff, realizing that the third-party email "came up in an inspection of our own email rules [and] alerted me immediately that the instructions you gave me may have been altered." Crowley further told Plaintiff, "I was wrong and [] it was a fraudulent transaction."

41. Glenwinkel likewise emailed Plaintiff stating, "I am very devastated by this series of events. . . Any fault on our side rests with me. . . We have a forensic tech company scrubbing our system, and are running advanced scans on all of our systems. . . . There seem to have been no other email breaches involving a client except for yours."

42. On information and belief, Defendants discovered that Third Parties hacked into at least one other email account or computer belonging to Defendants and notified their bank, Wells Fargo, of the computer breach.

### Plaintiff's Resulting Damages

43. As a direct result of Defendants' conduct, Plaintiff has suffered damages, plus attorney's fees, costs, interest, and severe emotional distress.

44. In particular, Plaintiff has been substantially damaged by Defendants' negligence and misconduct, including the loss of her Funds and additional costs to rent another residential property. She has also suffered significant emotional distress in



1  having her life savings negligently and recklessly transferred, in being displaced in the
2  United Kingdom and unable to purchase a replacement like-kind residential property, in
3  not having her 2017 taxes completed, and in being wrongfully denied repayment of her
4  Funds after continued promises to repay her by a certain date.

### FIRST CLAIM FOR RELIEF

### Negligence

### (By Plaintiff Against All Defendants)

45. Plaintiff realleges and incorporates by reference the allegations in each of the preceding Paragraphs as if fully set forth herein.

46. Defendants owed Plaintiff a general duty of care to avoid taking actions that would injure Plaintiff. Defendants also had a professional duty to Plaintiff as their client to make reasonable use of their superior knowledge, skill, and experience in practicing their profession and in safeguarding her Funds and in carrying out instructions to transfer the Funds. Their duty included protecting Plaintiff from being harmed by foreseeable criminal conduct of others, *i.e.*, from third-party wire fraud.

47. Defendants breached their duty of care to Plaintiff, including by not acting reasonably in: maintaining the security of their databases, failing to follow Plaintiff's instructions for the Funds transfer, improperly transferring Plaintiff's Funds to a third party, wiring a large amount of money to a foreign country based on an email from an unknown email address, and not seeking to recall the improper wire transfer for two weeks despite, among other things, Plaintiff's inquiries and an FBI fraud warning. A reasonable person would have known that this conduct would cause Plaintiff harm.

48. Defendants' misconduct was a substantial factor in causing Plaintiff's harm as described herein and in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF

### Breach of Fiduciary Duty

### (By Plaintiff Against All Defendants)

49. Plaintiff realleges and incorporates by reference the allegations in each of


1  the preceding Paragraphs as if fully set forth herein.

2  50.  Defendants had a fiduciary duty to Plaintiff as Plaintiff's exchange facilitator and tax consultant, including the duty to act with good faith and to exercise reasonable skill and diligence in safeguarding her Funds and in carrying out instructions to transfer the Funds. Their duty included protecting Plaintiff from being harmed by foreseeable criminal conduct of others, *i.e.*, from third-party wire fraud.

51.  Defendants acted as a fiduciary on Plaintiff's behalf for purposes of, among other things, conducting Plaintiff's taxes and safeguarding and transferring the Funds relating to Plaintiff's buying and selling of residential property.

52.  Defendants failed to act as a reasonably careful exchange facilitator and tax consultant would have acted under the same or similar circumstances.

53.  Defendants' misconduct was a substantial factor in causing Plaintiff's harm as described herein and in an amount to be determined at trial

### THIRD CLAIM FOR RELIEF

### Breach of Contract

### (By Plaintiff Against All Defendants)

54.  Plaintiff realleges and incorporates by reference the allegations in each of the preceding Paragraphs as if fully set forth herein.

55.  Plaintiff and Defendants entered into one or more contracts whereby Defendants agreed to safeguard Plaintiff's Funds, to carry out instructions to transfer the Funds, and to transfer the Funds to Plaintiff to purchase a replacement property, and to complete her 2017 taxes, in exchange for payment of fees.

56.  Plaintiff did all, or substantially all, of the significant things that the contract(s) required her to do, namely pay Defendants their fees.

57.  Defendants failed to do something that the contract(s) required them to do. Specifically, they failed to transfer Plaintiff's Funds to her to purchase a replacement property, and they failed to complete her 2017 taxes.

58.  Defendants' breach of contract was a substantial factor in causing Plaintiff's

harm as described herein and in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### Violation of Financial Code §51000 et seq.

### (By Plaintiff Against All Defendants)

59. Plaintiff realleges and incorporates by reference the allegations in each of the preceding Paragraphs as if fully set forth herein.

60. Defendants are exchange facilitators as that term is defined in California Financial Code §51000(b).

61. On information and belief, Defendants violated the California Financial Code §§51003, 51007, 51011, including by failing to maintain a bond, deposit, or letter of credit in an amount of at least $1 million; failing to maintain the requisite insurance policy or equivalent; failing, within a reasonable time, to account for moneys belonging to Plaintiff that may be in the possession of, or under the control of, the person misappropriating Plaintiff's Funds; and materially failing to fulfill contractual duties to Plaintiff to deliver the Funds to Plaintiff where such failure was not due to circumstances beyond the control of Defendants.

62. Plaintiff seeks civil relief under §51013.

63. Defendants' violation of Financial Code §51000 et seq. was a substantial factor in causing Plaintiff's harm as described herein and in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### Conversion

### (By Plaintiff Against All Defendants)

64. Plaintiff realleges and incorporates by reference the allegations in each of the preceding Paragraphs as if fully set forth herein.

65. Plaintiff owned, possessed, and/or had a right to possess certain personal property, including the Funds.

66. On information and belief, Defendants intentionally and substantially

1  interfered with Plaintiff's Funds by taking possession of them, preventing Plaintiff from
2  having access to them, destroying them, and/or refusing to return them after requested.
3       67.    Plaintiff did not consent to Defendants' conduct.
4       68.    Defendants' misconduct was a substantial factor in causing Plaintiff's
5  damages as described herein and in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

1. Compensatory damages in an amount to be proven at trial;
2. Costs of suit;
3. Interest on damages; and
4. Such other relief as the Court may deem proper.

Respectfully submitted,

DATED: May 2, 2018                **KRONENBERGER ROSENFELD, LLP**

By:   s/ Karl S. Kronenberger
         Karl S. Kronenberger

Attorneys for Plaintiff



KRONENBERGER ROSENFELD
150 Post Street, Suite 520, San Francisco, CA 94108

**REQUEST FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial of this action by jury on all issues so triable of right.

Respectfully Submitted,

DATED: May 2, 2018                              **KRONENBERGER ROSENFELD, LLP**


By:   s/ Karl S. Kronenberger
         Karl S. Kronenberger

Attorneys for Plaintiff


